**US District Court**
**District of Rhode Island**
**Civil Docket for Case #1:06-cv-00168-Ml-LDA** **April 20, 2006**

# 2nd Amendment to Complaint

**There existed a violation of the 14th Amendment**
**Rights of Dennis & Mary Demers - Conduct of the Receiver**
Demers et al vs. State of Rhode Island et al

**Plaintiff**
Dennis V. Demers –Pro Se

represented by Dennis V. Demers- Pro Se
231 Sunnybrook farm Road
Narragansett RI 02882 US
783-7404 Pro Se

**Plaintiff**
Mary L. Demers – Pro se

represented by Mary L. Demers – Pro Se
231 Sunnybrook Farm Road
Narragansett, RI 02882
783-7404 Pro Se

V.

**Defendant**
State of Rhode Island

**Defendant**
Jonathan Savage
*Receiver for Demers Foodservice*

2nd Amendment to the Complaint filed by Dennis & Mary Demers. **This is the 2nd Amendment to a Complaint filed by Dennis & Mary Demers in US. District Court on 4/10/06.**

**Dennis & Mary Demers pray the Court to recognize a violation of the Constitutional Rights of Dennis and Mary Demers under the 14th Amendment of the US Constitution. The actions of Jonathan Savage, the Court appointed Receiver for J.O. Demers Foodservice aka as Demers Foodservice of Woonsocket RI, denied Dennis and Mary Demers the right to live freely without fear of government control of their possessions.**

Civil Docket Case # 1:06-cv-00168-ML-LLDA .

The Complaint is a civil rights complaint by Dennis & Mary Demers. Each US citizen is afforded under the US Constitution the right to live in a free society. Dennis & Mary Demers in their original Complaint may have erroneously neglected to assert their rights under the Constitution that references - Amendment XIV section 1. All persons born or naturalized in the

United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protections of the laws. The Demers through this 2nd Amendment, as well as with the original Complaint, and the 1st Amendment to the Complaint, pray the US District Court for protection and relief for the violation of their civil rights.

The action Dennis & Mary Demers begs of the US District Court for the State of Rhode Island is to allow, through Jury trial, a verdict that will assess the damage done to these citizens of RI, equal to the financial harm that has been done to them. The actions of Jonathan Savage, as the Receiver for the State of RI violated "either-or-both" the 4 th and 14 th Amendments to the Constitution of the United States of America for the civil rights of Dennis and Mary Demers to trust in their government not to illegally "take" their property.

This violation of the civil rights of Dennis and Mary Demers occurred when Jonathan Savage acting as the Receiver for J.O. Demers Foodservice, knowingly and willfully devalued the assets of the corporation through gross mis-management and malfeasance. Unbeknownst to Dennis & Mary Demers, attorneys Peter Furness, Ted Orson & Jonathan Savage were well acquainted both professionally and personally years before the Demers would meet them.

On January 14, 2005 when Mr. & Mrs. Demers met Mr. Savage for the first time, Mr. Savage told the couple that he would market the J.O. Demers co. for bid, to the highest and best bidder. He stated that the only way to "save" the company was through a Receivership. Mr. Savage further stated that he would be totally fair to both parties in the process. He also stated, that a Receivership would take took no more than 3-6 months. He stated that Dennis Demers would be able to return to his business under the protection of the RI Court system without fear of harassment. Additionally, Mr. Savage told the Demers that all bills occurring during the receivership would be paid, and the company would keep functioning in the receivership with all bills paid. None of the above mentioned statements ever happened.

- The marketing brochure that was shown to the Demers by Mr. Savage on January 14, 2005 that was to have been put together for distribution was not done.
- Mr. savage introduces the Demers to Ted Orson January 18, 2005
- Mr. Savage becomes the Receiver on February 11, 2005
- **Dennis Demers was barred from his company.** Mr. Ted Orson the Demers attorney in March 2005 submitted a Motion to the Court to reinstate Mr. Dennis Demers that was denied by the Court, based on Mr. Savage's recommendation. (Two employees that were aiding in the company's embezzlement by the other partner, threatened to quit). At the same time Mr. Dennis Demers held responsibility for the company debt with out access to the company's financial records or entrance to his property.
- The Demers request that Ted Orson submit a Motion to have Jonathan Savage removed as Receiver. Ted Orson quits the Demers case on April 30, 2005, after refusing to request this from the Court that Mr. Savage be removed. Mr. Orson later liens the Demers home, removes lien only when the Demers settle his fees.

- During the early months of this receivership the three mortgages were not paid to UPS Capitol by the Receiver. UPS Capitol was not paid by the company at least up until August 2005. Mr. Savage arranged with Chris Ursini, a debt collector at UPS Capitol to sell the mortgages to KSI/James Demers Jr.
- In Mr. Savage's first report for fees in June 2005, he states that he has utilized the services of DiSanto & Priest to financially evaluate the company. Mr. Savage at the same time was already handling the negotiations to sell-off the mortgages to KSI and James Demers Jr. when he was allegedly having a true financial evaluation done of the company.
- **This receivership has been artificially extended beyond 13 months.**

Mr. Vincent Indeglia, James Demers Jr.'s attorney informed Mrs. Demers (after a deposition he conducted with her, with Mrs. Demer's attorney present) that UPS's Chris Ursini had worked other deals with Mr. Indeglia to sell deficient mortgages in the past. Mr. Indeglia further stated that he began discussions for Mr. James Demers in May 2005. Mr. Savage worked with Mr. Ursini and former UPS employees Ron Palumbo, now an accountant for James Demers Jr, starting in the month of May 2005. Arrangements were made to sell the mortgages to KSI Capitol of New Jersey, the financier of James Demers Jr. Mr. Indeglia handled the arrangements.

At the same time, Mr. Savage was telling the Court that he was utilizing the services of DiSanto & Priest to evaluate the business for a public sale.

The mortgages were sold to KSI/James Demers Jr. in late August or early September 2005. Dennis Demers attorney's Kathleen Hagarty and Bob Flaherty asked Gina Spaziano, an attorney in Mr. Savage's office at this time, whether the mortgages were being sold, and her response was that "the mortgages being sold was just **a rumor**".

At the time of the public bid in December 2005, Mr. Savage instructed James Demers Jr. to bid as low as possible for the company. Mr. Savage told Mr. James Demers Jr., he would be the only bidder. This statement was told to Mrs. Mary Demers in a conversation with her nephew James Demers Jr. by telephone on Sunday, April 9, 2006.

At the time of the auction Mr. Savage was working with Mr. James Demers Jr. to arrange for him to "low bid", or undercut the bid.

Mr. James Demers Jr could then collect the remainder of the debt from the guarantors, Dennis Demers and Henry Demers. However, Mr. James Demers partnered with Mr. Henry Demers. Essentially, Mr. James Demers was bidding with Mr. Henry Demers for this company. J.O. Demers was allowed to "take a bath" of its debt of 1.2million dollars to creditors and not pay Dennis Demers for his stock.

Owner, Henry Demers was able to replace his partner Dennis Demers, whom he did not like, with a partner he did like, James Demers Jr. Henry Demers lawyer, Larry Goldberg stated in the RI Supreme Court on Monday April 17, 2006, when he was allowed to address the Court that he

was there representing Henry Demers "as the partner of James Demers Jr". in Demers Foodservice. Mr. Goldberg specifically used the term "partner" in front of the Justices.

After the auction in Dec. 2006, of which Dennis Demers won at 1.575 million dollars, over Mr. James Demers Jr. bid of $975,000 ( a – (minus) $600,000 difference,) Mr. Indeglia & Mr. Goldberg appealed for their clients Henry & James Demers.

Judge Fortunato, who had allowed Mr. James Demers to lien his uncle's house, stated that he was nullifying the bid from Dennis Demers because Judge Fortunato did not feel that Mr. Dennis Demer's lenders were "institutional lenders".

This matter went to the RI Supreme Court. In the mean time Mr. Savage, Ex-Parte, appeared before Judge Fortunato and was allowed to put the assets of Demers out for a re-bid. Mr. Dennis Demer's attorneys went back to the Supreme Court on Friday afternoon March 5, 2006 at 5 pm and the Supreme Court allowed for Mr. Dennis Demers bid to go through.

However, Mr. Dennis Demers was then required to close by the following Thursday, March 11, 2006, and he had to put forth an additional $150,000 into the deposit for the bid, that he would later learn "was not refundable".

Monday, March 8, 2006 in the morning, 2 top sales people in the company quit. The mortgage company funding Dennis Demers was informed, honestly, that 10 million in the sales force had walked out the door. They balked. Mr. Dennis Demers could not close by Thursday because his attorney was out of town, Mrs. Hagarty, and the mortgage company was having difficulty trying to settle the matter of the 2 employees as it affected the mortgage.

Mr. Savage moved for a default, and James Demers Jr. low bid of $975,000 was accepted to satisfy the receivership. Mr. James Demers became the owner of Demers Foodservice on Monday March 15, 2006 Mr. James Demers then filed Court papers to have the $200,000 awarded to him of his aunt's money, and at the same time he placed a $387,000 lien on his uncle's and aunt's house.

Mr. James Demers Jr. would effectively own Demers Food service at his $975,000 bid minus $200,000 Dennis Demers bid premium (mutually exclusive) and minus $387,000 lien on property. Mr. James Demers would own a 13 million dollar per year (in sales) company for the real purchase price of **$388,000.** Mr. James Demers through the machinations of the RI Court system will own property at ($388,000) once belonging to his uncle, for less than his uncle owes on the guarantees ($387,000 lien).

A $387,000 lien is currently on Mary & Dennis Demers home by their nephew James Demers Jr. for repayment of half of the guarantee of this company's secured creditor James Demers Jr.
Mr. James Demers Jr. has also requested that he be awarded $200,000 his aunt Mary Demers, was required to place in the Receivers hands to bid on a company Mr. Dennis Demers worked at for 50 years. Mr. James Demer's jr. was at one time a part-time employee in a summer during high school at Demers Food Service.

The civil rights of Dennis & Mary Demers were violated by the actions of Jonathan Savage in his duties as the Receiver for J. O. Demers Beef Company, Inc. also known as Demers Foodservice of Woonsocket RI. The clear and convincing evidence is overwhelming that Mr. Savage used his position to further enrich himself and not for the good of this company.

Mr. Savage acting as the Court representative, for the State of Rhode Island has removed "real property" from both Mary & Dennis Demers and they have suffered tremendously. Mr. Savage reaped the benefit of **over $400,000** in fees for a 13 month receivership.

The winning bid of $975,000 was well below the appraisals done on the real estate (building & land) of this business. The creditors were owed $1.2 million dollars that they will never see.

In March 2005, Dennis Demers informed Mr. Savage at Superior Court, how Henry Demers was "shorting the inventory". Mr. Dennis Demers had spoken with employee Mary Ann Cote in March 2005 after Ms. Cote had been "laid-off". Ms. Cote told Dennis Demers how Henry Demers and employee Bill Gosselin, were "crediting" accounts for products delivered and then not charged for on paper, when cash was collected instead, by removing the product from the electronic inventory. Mr. Savage told Dennis to write these statements down and forward them to Ted Orson who would forward them to him. Dennis Demers emailed Ted Orson , who forwarded to Jonathan Savage , who did nothing with this information.

The synopsis of those transfer were written down and presented to Mr. Savage in March 2005. No action was taken by Mr. Savage and Henry Demers was allowed to continue on the premises running the operation, and Dennis Demers was barred. The company was auctioned and Mr. James Demers jr. and Mr. Henry Demers, his partner took over operations in March 2006. Mr. Goldberg addressed the RI Supreme Court and was allowed to speak as mentioned previously to the Justices in his capacity as representing Henry Demers, as James Demers Jrs. partner.

Mrs. Cote a twenty five year employee at J. O. Demers Beef co. also known as Demers Foodservice, informed Dennis Demers that as a bookkeeper at Demers she was aware that on December 1, 2004, the business had about $400,000 outstanding to creditors. Mr. Dennis Demers was informed by his attorney Ted Orson that as of the middle of January 2005 there was over $1.2 million in monies owed to creditors. Indeed the money owed to creditors during the Receivership is app. $1.2million dollars. Money those creditors will never see.

Dennis Demers was not allowed by either Corporate Attorney Peter Furness in January 2005 or by Receiver Jonathan Savage beginning in February 2005 to access any financial records to this company. In fact Mr. Savage stated to the Court that he had arranged for a financial evaluation by DiSanto & Priest. In June 2005, Mr. Savage informed the Court he was having the evaluation completed. In fact he did not. Mr. Savage after June 2005 , refused to respond to emails by Disanto & Priest for financial information to complete the evaluation to ready the company for auction. Mr. John Brough, of Disanto & Priest suggested to Mr. & Mrs. Demers In September 2005 that they should go to the Federal Prosecutor about Mr. Savage.

Mr. Savage continually obstructed attorney Kathleen Hagarty, representing Dennis Demers from acquiring any financial information on the company. Mr. Dennis Demers has not seen any IRS

year end tax forms for either 2004 or 2005 for a company he now holds guarantees for in the potential amount of $200,000 and the $387,000 lien on his home. Mr. Dennis & Mary Demers paid DiSanto & Priest $14,000 out of their own pocket, to piece together financial projections on this company to acquire financing in November 2005. Ms. Hagarty was put in a position of "begging" for financial information from Mr. Savage. Because of delays and refusals, the Demers incurred extensive financial and legal cost beyond what was reasonable in order to obtain financing to bid on this business. This ploy effectively damaged the Dennis Demers from obtaining conventional financing. In fact they were turned down by Slade Ferry Bank for financing because they had no "real" numbers on the financial stability of the company in November 2005.

**Rhode Island has a Uniform Fraudulent Transfer Act on its Law books in RI. Both Dennis Demers, and all the creditors owed the $1.2 million dollars deserved a Receiver who was a representative of the people of RI. Mr. Savage's responsibility to the people of RI was to act in a fair and just manner.**

In March of 2005, Henry Demers lawyer Goldberg admits in a letter to Jonathan Savage that his client cashed in Dennis Life Insurance Surrender proceeds and was in possession of those monies since 2003. The Receiver in a Court Proceedings tells the Court that he "chooses" not to deal with that matter. The cashing in of these policies did not come to light until receivership.

Additionally, Dennis and Mary Demers believe that the corporate attorney and Mr. Henry Demer's personal attorney Larry Goldberg were paid their legal fees from the corporate checking account. The legal fees for the company were 5k in 2003 and shot to 194K in 2004. The Dennis Demers do not know how much the company was charged for legal fees in 2005 as they have never been able to see any financials for year end.

There exist clear and convincing evidence that Henry Demers was siphoning off large sums of money from this company. Henry Demers was accusing his brother Dennis of theft, while his brother was in and Intensive Care Unit in order to cover up his own embezzlement. The payroll records for the week Dennis Demers was in the Intensive care Unit show that all the employees that received "cash bribes" before Dennis Stroke, got a raise on the books the week he was in ICU. These were employees that did not "want" Dennis to come back, according to Mr. Savage.

The other employees that were not receiving cash bribes were calling both Dennis and Mary through 2005, to tell them that the embezzling was continuing on in the Receivership and Mr. Savage was well aware of it. Yet Dennis Demers would have been arrested if he tried to go to his business or see his financial records in 2005.

Dennis and Mary Demers went to Jonathan Savage in good faith to stop the embezzlement in a company that was under the control of Henry Demers, to try to stop the Corporate Attorney Peter Furness and Henry Demers from taking over the company. Before Dennis Demers Stroke in December 2004, he had found that Henry Demers had put his girlfriend on both the payroll and health insurance of the business. She was a non employee. Dennis Demers had found that Henry had written a check for $9,600 out of the corporate checking account for his daughter car to fireside motors of Attleboro, mass. The Corporate attorney was working with Henry Demers

to oust Dennis. When Dennis got sick, he was never allowed to go back. Yet, he is financially responsible for a company that under Mr. Savage's watch had become in 13 months time almost insolvent. Mr. Savage told the Dennis Demers that he was maintaining "Status Quo" Dennis was out because he was sick and Henry was in because he was healthy. Mr. Savage had a sent a payment sent each week to keep him out and justified what he was doing by saying Dennis should be grateful to get any money at all.

Dennis Demers sent letter to all the vendors that are owed the $1.2million dollars that they will never be paid back as a result of this receivership. He apologized to them. He is truly saddened that they will never be paid. There is no money to pay them. At a bid of $975,000 with Mr. Savage fee of close to 500k, this was a scheme to defraud creditors.

Dennis and Mary Demers home has a $387,000 lien against it. Both Dennis and Mary are in ill health and are on the verge of bankruptcy. The lawyers involved have reaped the profits of deceit. Mr. Henry Demers and Mr. James Demers now own a company where they washed $1.2 million in debt and were able to do that because Jonathan Savage did not do his job. The government through the Court system of Rhode Island did not stop Mr. Savage from profiting by close to $500,000 in this receivership for 13months. The creditor and Dennis Demers were defrauded.

---

Dennis V. Demers — Mary L. Demers

Dennis V. Demers

I, hereby certify that I have served this 2nd Amendment to the US District Court against Defendant, State of Rhode Island and Jonathan Savage as their Agent.

* Attachments