STATE OF RHODE ISLAND SUPERIOR COURT
PROVIDENCE, SC.

DENNIS DEMERS
Plaintiff

Vs. P.C. No. 05- 0703

J.O. DEMERS BEEF, INC.
Defendant

**VERIFIED PETITION FOR THE APPOINTMENT OF A RECEIVER**

NOW COMES Plaintiff Dennis Demers and in his capacity as a creditor and stockholder of the Defendant, hereby submits this Verified Petition to appoint a receiver of the Defendant under rules of equity. As grounds therefore, the Plaintiff respectfully represents as follows.

1. Plaintiff Dennis Demers ("Plaintiff") is a creditor and stockholder of the Defendant and resides in Narragansett, Rhode Island.

2. Defendant J.O. Demers Beef, Inc. (the "Company") is a Rhode Island corporation operating its business at 171 St. Augustine Street, Woonsocket, Rhode Island, 02896.

3. The Company is a wholesaler of beef and other goods with annual sales of approximately $15 million to $17 million.

4. Plaintiff owns fifty (50%) of the outstanding issued stock of the Defendant.

5. Plaintiff's brother, Henry Dean Demers ("H. Demers"), owns the remaining fifty (50%) of the outstanding issued stock of the Defendant.

6. According to the most recent annual report filed by the Company with the Rhode Island Office of the Secretary of State, Plaintiff is president of the Company and H. Demers is the treasurer of the Company. A copy of said annual report is attached hereto as Exhibit A.

7. The Company is in desperate need of court intervention and stabilization due to the malfeasant and inappropriate actions of H. Demers. These actions include:

a. Upon information and belief, H. Demers has recently caused the Company to pay certain employees in cash and failed to report those payments to the Internal Revenue Service putting the Company in danger of criminal and civil sanctions.

b. In or about the Summer of 2004, H. Demers caused the Company to place his then-girlfriend, now spouse, Jeanette Pelrine, on the Company's health insurance plan even though Ms. Pelrine was not an employee of the Company. Furthermore, upon information and belief, H. Demers directed Mrs. MaryAnn Cote, an employee of the Company, to report that Ms. Pelrine had been hired by the Company and to backdate the hire date so that she would not be subject to the three-month waiting period required by health insurance companies. H. Demers also instructed Ms. Mary Sullivan, another employee of the Company, to place Ms. Pelerine on the company Advantage Payroll service account, as an employee. Ms. Pelerine had a serious illness at the time and the false disclosures could put the Company at significant risk for criminal and civil sanctions.

c. When the Plaintiff learned of H. Demers attempts to commit insurance fraud as aforesaid, he objected to such actions and directed Ms. Cote and Ms. Sullivan not to be an accessory to H. Demers' criminal scheme. H. Demers reacted with tremendous anger and hostility and physically assaulted the Plaintiff causing contusions to his shoulder and requiring him to get treatment at South County hospital. H. Demers is 49 years old and, upon information and belief, works out with weights regularly. The plaintiff is 62 years old, with a thirteen-year history of cardiac problems.

d. As a proximate cause of H. Demers' assault upon the Plaintiff and other actions of

hostility by H. Demers, on December 1, 2004, the Plaintiff suffered an arterial fibrillation heart attack and transient ischemic attack (TIA) stroke. Dennis Demers was hospitalized at South County Hospital in the Intensive Care Unit from December 1, 2004 to December 5, 2004.

e. The Company is also being investigated for insurance fraud by Beacon Mutual for false workers' compensation claims which, upon information and belief, were instigated by H. Demers.

f. The Company, which has always been profitable, lost $79,000 in 2003. Upon information and belief, the causes of the losses have never been properly investigated or explained.

g. H. Demers, who is the treasurer of the Company, has locked out the Plaintiff, who is the president of the Company, and cut off his paycheck.

h. As a result of his heart attack and stroke, proximately caused by the actions of H. Demers, the Plaintiff has been unable to return to work since December 1, 2005. H. Demers has made clear that he will never permit the Plaintiff to return to work. The Plaintiff has recovered from his heart attack and stroke to the point where he will soon be able to return to work. However, because of H. Demers unjustified actions, the Plaintiff, who is president of the Company, will not be able to return to work without breaking the peace.

8. Plaintiff has made every reasonable effort to resolve the mutual disputes between the parties in a reasonable way that would not require court intervention, would be fair to both parties and would be in the best interest of the Company and its creditors. Copies of two letters making such proposals are attached as Exhibit B. H. Demers never formally responded to these letters but informally rejected them.

9. In the opinion of Plaintiff, it is urgent and advisable that a Temporary Receiver be

appointed immediately to take charge of the affairs, assets, estate, effects and property of said Defendant to preserve the same for the interest of all creditors.

10. This Petition is made in good faith for the protection of the business of the Defendant and for the benefit of its creditors and stockholders, and the appointment of a Temporary Receiver is most desirable to protect the status quo of the Defendant pending final hearing on the appointment of a Permanent Receiver.

11. This Petition is filed to seek relief as prayed by virtue of and pursuant to this Court's equity powers.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court appoint a Temporary Receiver forthwith and also appoint a Permanent Receiver to take charge of the assets, affairs, estate, effects and property of the Defendant, that said Temporary Receiver and Permanent Receiver be authorized to continue to operate the business of the Defendant, if such Receiver determines that continuing to operate the business of the Defendant is in the best interests of the Defendant's Estate, and that Plaintiff have such other and further relief as this Court shall deem proper.

Dennis Demers

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence, Rhode Island on the 11th day of February, 2005, before me personally appeared Dennis Demers who made oath that he subscribed to the foregoing Petition, that he knows the contents thereof and that the same are true, excepting those matters stated on information and belief, and as to those matters he believes them to be true.

Notary Public: Theodore Orson
Expires: October 25, 2008

## CERTIFICATE OF ATTORNEY

I, Theodore Orson, Attorney for the Plaintiff, certify that this Petition is made in good faith for the protection of the business of the Defendant and for the benefit of creditors, and that the appointment of a Temporary Receiver is desirable to protect the status quo pending final Hearing for the appointment of a Permanent Receiver.

Theodore Orson, Esq.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
*Office of the Secretary of State*
*Matthew A. Brown, Secretary of State*

*Corporations Division*
*100 North Main Street*
*Providence, RI 02903-1335*
*401.222.3040*

# PROFIT CORPORATION ANNUAL REPORT FOR THE YEAR 2004

***Filing Period: January 1 - March 1 • Filing Fee: $50.00***
*(FORM MUST BE TYPED OR PRINTED IN BLACK)*

1. Corporate ID No.: 6778
2. Name of Corporation: J. O. DEMERS BEEF INC.
3. Street Address Principal Business Office: 171 St. Augustine St — City: Woonsocket — State: RI — Zip: 02896
4. Business Phone No.: 769-5400
5. State of Incorporation: RHODE ISLAND
6. SIC Code: 2859
7. Brief Description of the Character of Business Conducted in Rhode Island: WHOLESALE FOOD SUPPLY

**8. NAMES AND ADDRESSES OF THE OFFICERS: ("X" BOX FOR ATTACHMENT) ☐ FILL IN SPACES BEFORE USING ATTACHMENTS**

| | |
|---|---|
| President Name: Dennis Demers | Vice President Name: none |
| Street Address: 231 Sunny Brook Farm Rd | Street Address: |
| City: Narr State: RI Zip: 02882 | City: State: Zip: |
| Secretary Name: none | Treasurer Name: Henry D Demers |
| Street Address: | Street Address: 80 Fisher Rd, #71 |
| City: State: Zip: | City: Cumberland State: RI Zip: 02864 |

**9. NAMES AND ADDRESSES OF THE DIRECTORS: ("X" BOX FOR ATTACHMENT) ☐ FILL IN SPACES BEFORE USING ATTACHMENTS**

| | |
|---|---|
| Director Name: Dennis Demers | Director Name: Henry Demers |
| Street Address: same as above | Street Address: same as above |
| City: State: Zip: | City: State: Zip: |
| Director Name: | Director Name: |
| Street Address: | Street Address: |
| City: State: Zip: | City: State: Zip: |

**10. SHARES AUTHORIZED ("X" BOX FOR ATTACHMENT) ☐**

AUTHORIZED SHARES

| Number of Shares | Class/Series | Par Value |
|---|---|---|
| 1,000 NO PAR VALUE, 100 $1.00 PAR VALUE | | |

**11. SHARES ISSUED ("X" BOX FOR ATTACHMENT) ☐**

ISSUED SHARES

| Number of Shares | Class/Series | Par Value |
|---|---|---|
| 500 | C | no par |

This report must be signed in ink by either the President, Vice President, Secretary, Assistant Secretary, Treasurer, Receiver or Trustee

* 6 7 7 8 *

File Date: 2/17/04
Check No.: 6426
By: [illegible]
FOR SECRETARY OF STATE USE ONLY

Under penalty of perjury, I declare and affirm that I have examined this report, including any accompanying schedules and statements, and that all statements contained herein are true and correct.

Signature of Officer: [illegible signature] Date: [illegible]

Print or Type Name of Officer: Henry D. Demers

Title of Officer: Treasurer

Form 630 Rev. 12/03

ORSON AND BRUSINI LTD

COUNSELORS AT LAW

Theodore Orson *
(401) 861-0314

Stephen M. Brusini **
(401) 861-0102

Christine L. Rossi *
(401) 861-1170

* also admitted to practice in Massachusetts

** also admitted to practice in Massachusetts and New York

January 31, 2005

**VIA FIRST CLASS MAIL**
Henry Dean Demers
80 Fisher Road, Unit 71
Cumberland, RI 02864

Re: J.O. Demers Beef, Inc. (the "Company")

Dear Mr. Demers:

I have been engaged by your brother, Dennis Demers, in connection with the pending disputes. As you are probably aware, I have had several discussions with Peter Furness regarding the current situation.

It is clear that the status quo cannot continue. If the disputes cannot be resolved in a rational and consensual manner, they will ultimately be resolved by a court over a long period of time and at a great cost to you and your brother, both financially and otherwise. That would be an unfortunate as we have a window of opportunity to create a rational structure to resolve the disputes expeditiously and less expensively.

The following is a proposal which contains four main components: (1) a procedure for valuing the Company stock; (2) a procedure for selling the Company stock or its assets; (3) a procedure to arbitrate the claims between you and Dennis both individually and derivatively on behalf of the Company (collectively, the "Mutual Claims"); and (4) a procedure to provide safeguards to protect the assets of the Company while the process plays out.

I have done my best to create a structure in which all of the rights, risks and benefits are mutual and which neither stockholder is put at a competitive advantage or disadvantage. I hope you review the proposal with your counsel and let him or her know that I am willing to meet and discuss the proposal at any time mutually convenient.

**This proposal is for discussion purposes only. No agreement shall be binding against either stockholder until a written agreement is drafted and executed by both stockholders (the "Agreement").**

55 Dorrance Street, Suite 400 Providence, RI 02903 401-223-2100 401-861-2922 *fax* www.orsonandbrusini.com

1. **PROCEDURE FOR VALUING STOCK.**

A forensic accountant/business appraiser ("Appraiser") will be engaged by the Company to determine the fair market value of the Company stock. The Appraiser will be required to issue his/her opinion as to the stock value within in a defined period of time (i.e. 45 days). As both stockholders have made claims of improprieties by the other stockholder, which if proven could substantially affect the value of the Company stock, the Appraiser will be authorized to conduct whatever forensic investigation that he/she believes is necessary to properly value the Company stock including, without limitation, complete access to the Company's books and records and the right to interview the stockholders and appropriate employees.

We should meet and try to agree on an appropriate Appraiser. The person (or firm) should be experienced in both forensic investigation and business valuation. If we cannot come to such an agreement, I suggest we each appoint an accountant to meet and jointly agree to a list of five (5) qualified Appraisers. We could then each eliminate two (2) of the candidates from the list and the remaining person would be designated as the Appraiser.

The Appraiser shall be paid by the Company monthly upon invoice. Copies of its invoices shall be sent to both stockholders.

2. **PROCEDURE FOR SELLING STOCK OR ASSETS.**

Fourteen (14) days after the Appraiser issues his/her opinion as to the value of the stock (the "Stock Value"), each stockholder shall be required to notify the other stockholder and the "Keeper," defined below, in writing, whether or not he elects to purchase the other's stock at the Stock Value. If he elects to purchase the other stockholder's stock (an "Electing Stockholder"), the Electing Stockholder must simultaneously provide the Keeper with a cashier's check or other immediately available funds in an amount equal to 10% of the Stock Value of the other stockholders' stock as a non-refundable deposit. The Electing Stockholder must then pay the balance of the value of the other stockholder's Stock Value in cash within sixty (60) days. If he fails to do so, the Keeper shall pay his deposit to the non-purchasing stockholder as liquidated damages and the Keeper shall market and sell the Company in a manner that the Keeper determines is commercially reasonable. The stockholders shall not be barred from making bids to purchase the Company according to the terms set by the Keeper.

In the event both stockholders elect to purchase the other's stock, the Keeper shall schedule a private auction within seven (7) days between the stockholders to purchase the other stockholder's stock. The winning bidder shall increase the amount of his deposit held by the Keeper to an amount equal to 10% of the amount of his winning bid. The Keeper shall then return the deposit of the losing bidder. The winning bidder shall pay the balance of the amount of the losing bidder's stock in cash within sixty (60) days of the date of the auction. If he fails

to do so, the Keeper shall pay his deposit to the non-purchasing stockholder as liquidated damages and the Keeper shall market and sell the Company in a manner the Keeper determines is commercially reasonable. The stockholders shall not be barred from making bids to purchase the Company according to the terms set by the Keeper.

In the event neither stockholder elects to purchase the other stockholder's stock, the Keeper shall be authorized to market and sell the Company in a manner the Keeper determines is commercially reasonable. The stockholders shall not be barred from making bids to purchase the Company according to the terms set by the Keeper.

## 3. ARBITRATION OF MUTUAL CLAIMS.

After the sale of the stock or the assets is consummated, the stockholders shall each have thirty (30) days to file proofs of claim against the other stockholders for claims they have against each other individually and claims they believe the Company has against each other derivatively. The Keeper shall then act as arbitrator of those disputes. The Keeper shall provide the parties with the rules of the arbitration including a discovery schedule. The stockholders shall waive any rights of appeal or court challenges to the Keeper's rulings.

## 4. APPOINTMENT, POWERS AND OTHER DUTIES OF THE KEEPER.

A Keeper shall be immediately appointed. He or she will be charged with instituting safeguards to protect the Company's business and assets, including cash, until the stock or the assets of the Company are sold.

Any disputes regarding the interpretation of or performance under the Agreement shall be decided by the Keeper after providing both parties with notice and an opportunity to be heard and both parties waive the right of appeal or the right to a court hearing thereon.

I suggest we appoint Jon Savage of Shechtman, Halperin & Savage as Keeper. I want to disclose that I have already spoken with Jon about the case and he has met with your brother. However, as Peter Furness would attest, Jon has great experience in these matters and would not favor either side. Jon is one of the attorneys most often chosen by the Superior Court to act as Receiver in complex and contentious matters such as this. Before making up your mind, I suggest that you contact Jon directly and meet with him privately in order to determine whether you have a sufficient comfort level with him. If you are not comfortable with Jon, we will not insist that he act as Keeper. In such event, we could attempt to mutually agree to appoint another Keeper or, if we unable to reach such an agreement, we could each appoint an attorney from the Superior Court list of approved Receivers (the "Receiver's List") to meet and choose a Keeper from the Receiver's List.

The Keeper shall be paid by the Company monthly upon invoice. Copies of said invoice shall be sent to both stockholders.

5. **MISCELLANEOUS.**

From the date of the Agreement until the stock or the assets of the Company are sold, both stockholders shall collect weekly salaries of $3,500 gross, unless the Keeper determines that the Company cannot afford such salaries. In such event, the Keeper shall determine the stockholders' mutual salaries (which shall be equal).

Dennis shall not be prohibited from going to the premises to check his mail and email. He and you shall have full access and the right to copy any Company records either at the premises or with the Company accountant.

This proposal is admittedly long and complicated. It is offered in the spirit of compromise and I hope you consider it seriously. We are willing to discuss any of the terms to make it as fair as possible. The alternative, long and expensive litigation, will serve no one's interest except the lawyers and other professionals. I hope you consider it in the spirit in which it is offered.

If you want to move forward with the proposal, I should begin immediate communications with your counsel in order to incorporate any changes we agree upon and to draft the Agreement. Please have him/her contact me directly.

The current situation is intolerable. Accordingly, we need know whether you have any interest in moving forward in a consensual manner. Please let me know by Friday, February 4 or we assume you have no interest in resolving the matter consensually.

I hope to hear from you or your attorney this week.

Very truly yours,

[signature]

Theodore Orson

CC: Peter Furness, Esq. (via fax)
Dennis Demers (via First Class mail)

ORSON AND BRUSINI LTD

COUNSELORS AT LAW

Theodore Orson *
(401) 861-0344

Stephen M. Brusini **
(401) 861-0402

Christine L. Rossi *
(401) 861-1170

* also admitted to practice in Massachusetts

** also admitted to practice in Massachusetts and New York

February 8, 2005

**VIA MESSENGER**
Henry Dean Demers
J.O. Demers Beef, Inc.
171 St. Augustine Street
Woonsocket, RI 02896

Re: J.O. Demers Beef, Inc. (the "Company")

Dear Mr. Demers:

This letter follows up my prior letter to you of January 31. In that letter, I made a proposal to establish a structure to provide for a fair disposition of the Company's stock or assets and to resolve all disputes between the parties in a fair, efficient and cost-effective manner. I requested a response from you by last Friday. I received no such response, but Peter Furness told me that you needed additional time to respond because the auditors were in the business last week making it impossible for you to review the matter with your counsel. In the spirit of compromise, and because we continue to believe that a consensual resolution of disputes serves all parties' interests, as well as the interests of the Company, I indicated to Peter that we would hold off taking action until at least close of business on Wednesday, February 5.

Dennis did not receive his paycheck last week. Peter has indicated to me that he has tried several times to communicate with you to find out whether this was an oversight or whether you directed the payroll company to cut off his paycheck. Peter has indicated to me that and that you have not responded to his calls. If it was not an oversight, it certainly sends a message that you have no desire to negotiate in good faith.

At the risk of repeating myself, we have a very small window of opportunity to act rationally and in the best interests of the Company. If you have done nothing improper at the Company, you should have nothing to fear, and a lot to gain, from the proposal. I made clear in my letter that I would be willing to discuss and negotiate in good faith the terms of the proposal so that we could all be satisfied that the valuation and dispute resolution structure is fair to all parties, efficient and cost effective.

Please respond to the proposal by close of business tomorrow, Wednesday, February 9, 2005 or we will assume that you have no desire to resolve the disputes in a manner that does require court intervention.

Very truly yours,

Theodore Orson

CC: Peter Furness, Esq. (via fax)
Dennis Demers (via First Class mail)